UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JONATHAN L. LEISURE, | ) |
| *Plaintiff,* | ) ) ) |
| vs. | ) Cause No. 1:10-cv-1205-WTL-MJD ) |
| MICHAEL J. ASTRUE, | ) ) |
| *Defendant*. | ) |

### ENTRY ON JUDICIAL REVIEW

Plaintiff Jonathan Leisure requests judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court rules as follows.

### I. PROCEDURAL HISTORY

Leisure applied for SSI and DIB in 2007, alleging that he had been disabled since January 1, 2003, due to human immunodeficiency virus ("HIV"), AIDS, depression, neuropathy, fatigue, and bowel and urination trouble. His applications were denied initially and upon reconsideration, after which he requested and was granted a hearing before an Administrative Law Judge ("ALJ"). Leisure was represented by counsel at the hearing, which was held on July 28, 2009. Leisure and a friend, Kenneth Lockridge Jr., testified at the hearing. Thereafter, on March 25, 2010, the ALJ rendered his decision in which he concluded that Leisure was not disabled under the terms of the Social Security Act ("the Act"). The Appeals Council denied Leisure's request for review of the

ALJ's decision on July 26, 2010.[1] Leisure then filed this action for judicial review.

## II. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. *Weatherbee v. Astrue*, 649 F.3d 565, 568-69 (7th Cir. 2011); 20 C.F.R. § 404.1520(b).[2]

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in

---

[1] Leisure takes issue with the Appeals Council's failure to address the specific legal arguments made by his counsel in a letter, arguing that the Commissioner thus violated a rule set forth in its own Hearings, Appeals, and Litigation Law Manual. As the Commissioner points out in his response, however, that rule was "temporarily suspended" in July 1995 and appears not to have been reinstated.

[2] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

>past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee*, 649 F.3d at 569.

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ must articulate his analysis of the evidence in her decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Id.*

## MEDICAL EVIDENCE

Leisure was born on May 1, 1967, and has a twelfth grade education. His most recent past relevant work was as a maintenance supervisor at a theater.

Leisure was diagnosed with HIV in 1986. Many symptoms have been noted in his medical records, including fatigue, memory and concentration problems, headaches, diarrhea, and

3

neuropathy in his hands and feet.[3]

In August 2008, Leisure began treatment for his HIV with the LifeCare Program in Indianapolis. He reported that he had been off of antiretroviral therapy for approximately a year and had been experiencing "ataxia, some hearing loss, confusion, memory loss and loss of bladder and bowel control" for several months. He also reported losing 40 pounds in the previous two months; his weight was noted as 149 pounds.

Leisure was referred for lab tests to determine the appropriate course of antiretroviral therapy. He also underwent a CT scan; it revealed "bilateral symmetrical supratentorial and infratentorial white matter lesions" in his brain consistent with HIV encephalitis. A September 2008 MRI revealed "symmetric bilateral frontal lobe and bilateral cerebellar white matter signal abnormalities," which again was noted to be suggestive of HIV encephalitis. A follow-up MRI in October 2008 showed "persistent T2 hyperintensity in the bilateral frontal lobe" which was "consistent with HIV encephalopathy and mild cerebral atrophy."

By December 2008, Leisure had begun a course of antiretroviral therapy and reported increased energy. His weight had increased to 161 pounds, his diarrhea had dissipated, and his mental status had improved.

Dr. Ravi Misra completed an HIV Medical Assessment Form on behalf of Leisure in December 2008. Dr. Misra checked boxes indicated that Leisure suffers from "HIV encephalopathy, characterized by cognitive or motor dysfunction that limits function and progresses" and "other neurological manifestations of HIV infection (e.g. peripheral neuropathy),

---

[3]In addition to the symptoms relating to his HIV, Leisure suffers from depression. Inasmuch as Leisure does not raise any issues on appeal with regard to the ALJ's findings with regard to his depression, the Court has not included facts relating to his mental health treatment or the mental health evaluations that are contained in the record.

with significant an [sic] persistent disorganization of motor function in 2 extremities resulting in sustained disturbance of gross and dextrous movements, or gait and station." Dr. Misra also opined that Leisure's functional limitations restricted him from sitting more than fifteen minutes at a time and standing more than ten minutes at a time. He opined that Leisure could lift or carry up to ten pounds frequently, more than ten pounds occasionally, more than twenty pounds rarely, and never should lift or carry more than fifty pounds. He noted that Leisure's ability to work would be affected by the fact that he has an "extremely limited attention span" and an "inability to focus."

On February 4, 2009, Dr. Wa'el Bakdash conducted a consultative exam. Dr. Bakdash reported that Leisure's gait and posture were normal, he was able to stand on his heels and toes without difficulty, and he could grasp, lift, carry, and manipulate objects in both hands. He found that his range of motion was normal in all respects.

On April 15, 2008, Dr. Louise Tashjian reviewed Leisure's medical records and completed a Physical Residual Functional Capacity Assessment form ("RFC Form"). Dr. Tashjian noted that Leisure's primary diagnosis as HIV and his secondary diagnosis as neuropathy. She opined that Leisure could occasionally lift or carry up to twenty pounds and frequently life or carry up to ten pounds and could sit, stand or walk up to six hours in an eight hour work day. She also found Leisure limited to occasional climbing and balancing and noted that he should avoid concentrated exposure to fumes, dust, etc. On February 6, 2009, Dr. Richard Wenzler reviewed Leisure's medical records and completed an RFC Form on which he noted Leisure's primary diagnosis as "hiv encephalopathy - resolved" and his secondary diagnosis as neuropathy. Dr. Wenzler's opinion regarding Leisure's restrictions was identical to

that of Dr. Tashjian.  Dr. Wenzler did not have Dr. Misra's December 2008 opinion in the records he reviewed.  Dr. James Fletcher had completed an RFC Form in November 2007 on which he opined that Leisure could lift 50 pounds occasionally and 25 pounds frequently at that time.

### III.  THE ALJ'S DECISION

At step one of the ALJ's analysis, he concluded that Leisure had not engaged in substantial gainful activity since January 1, 2003, the alleged onset date of his disability.  At step two, the ALJ concluded that Leisure had the severe impairments of HIV, major depression and drug and alcohol abuse.  In addition, he noted that Leisure claimed to suffer from irritable bowel syndrome but that the record failed to reflect a diagnosis of this condition. At step three, the ALJ concluded that Leisure's impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Leisure had the residual functional capacity to perform a range of light work that was limited to simple and repetitive tasks not involving the public or working closely with others and that would permit him to avoid concentrated exposure to fumes, dust, odors, gases and poor ventilation.  This would preclude Leisure from performing his past relevant work.  Finally, at step five, the ALJ determined that considering his residual functional capacity, Leisure was capable of performing other occupations currently available in the national economy, including assembler, packer, and stock clerk.  Therefore, the ALJ determined that Leisure was not disabled.

### IV.  DISCUSSION

Leisure argues that the ALJ erred at step three because he found that he did not satisfy Listing 14.08(G) without fully developing the record.  The Court agrees.

Listing 14.08(G) dictates a finding of disabled if a claimant has "HIV encephalopathy, characterized by cognitive or motor dysfunction that limits function and progresses." 20 C.F.R. Pt. 404, Subpt. P, App. 1.  As noted above, Dr. Ravi Misra, Leisure's treating physician, completed an HIV Medical Assessment Form on behalf of Leisure in December 2008 in which he opined–by checking boxes–that Leisure had "HIV encephalopathy, characterized by cognitive or motor dysfunction that limits function and progresses."  The ALJ rejected Dr. Misra's opinion, finding as follows:

> I considered the claimant's human immunodeficiency virus under the criteria of listing 14.08.  However, the evidence fails to demonstrate the requirements of the listing.  In making this finding, I acknowledge a treating source [Dr. Misra] reported the claimant suffers from HIV encephalopathy.  However, the medical evidence fails to clearly demonstrate this condition given prior reports note diagnosis of depression and mood disorder due to medical condition rather than encephalopathy.  Moreover, even if the claimant has HIV encephalopathy, the record fails to demonstrate it is characterized by cognitive or motor dysfunction.  Furthermore, despite [Dr. Misra's] report, the evidence fails to demonstrate other neurological disorders with significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dextrous movements, or gait and station.  Therefore, I find the claimant's impairment fails to meet or medically equal the requirements of this listing.

Record at 14.  Later in his decision, the ALJ further found:

> As for the opinion of Ravi Misra from the LifeCare Program, which the claimant's attorney identifies as Dr. Ravi Misra, this opinion was given little weight because it is not well supported by the objective medical evidence, clinical findings, or treatment history demonstrated by the record.  Moreover, treatment notes demonstrate the claimant only began treatment with the LifeCare Program on August 13, 2008, which is more than five years after the beginning of the relevant period.  This is also only four months prior to the date this opinion was issued.  Thus, the record fails to demonstrate a treating relationship of a nature, duration, length, and frequency which would entitle this opinion to greater weight.  Thus, more weight was given to the opinion of the State agency consultants.

Record at 19.

Leisure argues, and the Court agrees, that the ALJ's treatment of Dr. Misra's opinion fails

to comply with the "treating physician rule," pursuant to which "[a] treating physician's opinion that is consistent with the record is generally entitled to 'controlling weight.'" *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir.2010)). "An ALJ who chooses to reject a treating physician's opinion must provide a sound explanation for the rejection." *Id.* (citing 20 C.F.R. § 404.1527(d)(2); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir.2010); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir.2007)). In this case, the reasons given by the ALJ for rejecting Dr. Misra's opinion were not sound.

  First, the Court is troubled by the fact that the ALJ seems to call into question whether Dr. Misra is a physician by his comment that Leisure's *attorney* identified him as "Dr. Ravi Misra." While it is true that Dr. Misra signed his assessment form as simply "Ravi Misra," there are numerous references to "Dr. Misra" in the medical records from the LifeCare Program, including notations that the results of his brain scans were being sent to Dr. Misra and that Dr. Misra agreed with the antiretroviral regimen he was prescribed. If the ALJ actually was uncertain as to Dr. Misra's qualifications, that issue could have easily been cleared up with a simple letter or phone call. As it stands, the Court is not certain whether the ALJ discounted Dr. Misra's opinion because he thought he was not a physician, but it appears that he may have.

  Second, the ALJ's statement that he gave greater weight to the state agency consultants' opinions than that of Dr. Misra because Dr. Misra had only been treating Leisure for a few months defies logic. The consultants either saw Leisure once or never met him at all and had never treated him; therefore, to the extent that the length of relationship was relevant, even Dr. Misra's short span of treatment was significantly greater than that of the consultants.

  Third, it is irrelevant to the ALJ's ultimate conclusion–that Leisure has not been disabled at any time from January 1, 2003, through the date of his decision–that Dr. Misra did not begin

treating Leisure until several years after his alleged onset date. Whether and to what extent Dr. Misra has knowledge of Leisure's condition in the years prior to their treating relationship would certainly be relevant if the ALJ found Leisure to be currently disabled and then had to determine the onset date of his disability, but it is not relevant to the question of the accuracy of Dr. Misra's representation of Leisure's condition as of December 2008 when he completed the HIV Medical Assessment Form.

Finally, the ALJ found that Dr. Misra's opinion is "not well supported by the objective medical evidence, clinical findings, or treatment history demonstrated by the record." That may be true; frankly, the Court has no idea. Leisure has had a CT scan and two MRIs that show something in his brain that is "suggestive of HIV encephalopathy versus PML." The tests apparently were ordered because he was exhibiting an altered mental state, although his mental state seems to have improved during the time in between the original and the follow-up scans. Leisure also has been diagnosed with neuropathy, and he testified that it causes problems with strength and using his hands as well as with standing. Does the evidence of record demonstrate that Leisure has "cognitive or motor dysfunction that limits function and progresses"? If so, is it (or are they) caused by HIV encephalopathy? The only physician who has opined directly on that issue is Dr. Misra, and he answered in the affirmative. The consultants on which the ALJ relied do not directly contradict a finding that he has some level of motor dysfunction; indeed, they seem to support it by finding some limitations in his ability to climb and lift. The Listing does not require that the motor dysfunction be of a particular severity, just that it exist, limit function, be caused by HIV encephalopathy, and "progress."

The ALJ made his own determination regarding the medical evidence of record and decided that it contradicted Leisure's treating physician's unequivocal opinion. This was error. If

9

the ALJ felt that there was insufficient explanation for Dr. Misra's opinion–a conclusion that is not at all unreasonable–he should have asked Dr. Misra for additional information. If he remained unsure whether the medical evidence supported Dr. Misra's opinion, he could have obtained a medical expert to explain what type of medical evidence would support a finding that the Listing was met and whether that medical evidence exists in this case. He did none of these things, but instead simply substituted his own analysis of Leisure's medical records for that of his treating physician. The case must therefore be remanded for additional consideration of whether Leisure's conditions satisfies Listing 1.08.

Leisure also complains that the ALJ erred in finding that he has the RFC to perform a range of light work and in discrediting his testimony regarding his migraine headaches and fatigue. The Court has reviewed the ALJ's findings regarding those issues and finds them to be thorough, well-articulated, and supported by substantial evidence. Leisure also takes issue with the ALJ's treatment of his weight loss. The ALJ found, based on Leisure's testimony at the hearing that he weighed 170 pounds, that Leisure's weight remained in the normal range despite the fact that he had lost 27 pounds over the past year. Leisure argues that "the ALJ ignored the medical records from [the] Lifecare Program which showed the plaintiff had lost 40 pounds in two months bringing his weight down to 149 pounds." The records from the Lifecare Program do, indeed, indicate that Leisure's weight had dropped to 149 pounds in August 2008 and that he had been suffering from diarrhea. However, by December 5, 2008, his weight was up to 161 pounds and his diarrhea had "completely dissipated after starting antiretrovirals." Leisure fails to explain the relevance of his temporary weight loss, which obviously had resolved itself by the date of the hearing, and therefore has not shown that the ALJ erred in his consideration of his

weight as it relates to his disability claim.

## V. **CONCLUSION**

For the reasons set forth above, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 03/07/2012

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification